Him UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

SEAN W. WELCH,  )
      Plaintiff,  )
  )
v.  )  Case No. JES-21-2318
  )
TOMIKA REHMANN, *et. al.*,  )
  )
      Defendants.  )

## ORDER AND OPINION

Plaintiff, proceeding *pro se*, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated while he was detained at the Macon County Jail ("Jail"). Now before the Court are two Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The first motion (Doc. 44) is brought by Sheriff Jim Root and the Macon County Sheriff's Office ("Sherriff's Office"). The second motion (Doc. 48) is raised by Nurse Kedra Emmerling and Health Administrator Tomika Rehmann. For the reasons stated below, Defendants' Motions are GRANTED.

## PROCEDURAL HISTORY

In his Amended Complaint, Plaintiff alleged various issues concerning the Jail's COVID-19 policies and his delayed medical treatment for COVID-19. Doc. 14. In the Merit Review Order, the Court permitted the following assertions to proceed, Doc. 13 at 5 (altered format):

    a) Defendants Root, the Macon County Sheriff's Office, and Rehmann violated his constitutional rights in approximately October and November of 2021 when they failed to follow proper protocols and unnecessarily exposed Plaintiff to COVID; and
    b) Defendants Emmerling and Rehmann violated Plaintiff's constitutional rights and the state law tort of medical malpractice when they delayed care for COVID symptoms during the same time frame.

After discovery, Defendants moved summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C

§ 1997e(a). Docs. 44, 48. Despite numerous extensions, Plaintiff has yet to file a response to the motions. *See* Text Orders Dated Sept. 21, 2023; Dec. 13, 2023; Jan. 17, 2023. Plaintiff's filing omissions necessarily result in his failure to respond to Defendants' statement of facts.

When the non-movant does not respond to the movant's statement of facts, the non-movant concedes the movant's version of the facts. *See Salatas v. Lake Cnty. Gov't*, JEM-20-414, 2023 WL 4947916, at *2 (N.D. Ind. Aug. 2, 2023) (noting that where plaintiff has not responded and challenged defendant's statement of material facts, "the facts . . . as asserted by Defendant and to the extent they are consistent with the evidence cited in support, are considered to exist without controversy for the purposes of this Motion for Summary Judgment.") (citing *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994)); *see also* CDIL-LR 7.1(D)(2)(b)(6); Fed. R. Civ. P. 56(e)(2). However, a party's failure to submit a timely response to a motion for summary judgment does not automatically result in summary judgment for the moving party. *See United States v. Goldberg*, CRN-15-5746, 2018 WL 1531002, at *3 (N.D. Ill. Mar. 9, 2018) ("…an opposing party's silence—in failing to respond to the movant's statement of material facts—must be weighed in light of other evidence rather than leading directly and without more to the conclusion of guilt or liability.") (citation and emphasis omitted). If there remains a genuine disputed issue, "'summary judgment must be denied even if no opposing evidentiary matter is presented.'" *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995) (quoting *Wienco Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992) in turn quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970)). Nevertheless, the Court is free to consult other materials in the record and need not accept Defendants' facts as true solely because Plaintiff failed to properly dispute them. *See Latko v. Cox*, No. 20-2634, 2021 WL 5234863, at *2 (7th Cir. Nov. 10, 2021).

## UNDISPUTED MATERIAL FACTS[1]

At all times relevant to this action, Plaintiff was an inmate under the custody of the Sheriff's Office and detained at the Jail. SOF ¶ 1 (citing Doc. 13 at 2). While detained, the Inmate Handbook (Doc. 44-2) was made available to Plaintiff via a kiosk system in each of the housing unit's day spaces, and he was informed of where and how to access the handbook on entry to the Jail. SOF ¶ 6 (citing Doc 44-1 (Declaration of Jamie Belcher, the "Belcher Decl.")).[2]

The "Grievance Procedure," which has been in effect at all relevant times to this lawsuit, SOF ¶ 8 (citing Belcher Decl.), is outlined in the Inmate Handbook as follows, Doc. 44-2 at 26:

> An inmate grievance procedure is made available to all inmates and includes at least one level of appeal. Correctional Staff will make every effort to resolve problems in an informal manner. If the inmate deems the resolution to the problem is inadequate, an inmate grievance may be requested and filed. Corrections staff, upon request, will accept inmate request forms with "grievance" written on the subject line and the issue to be grieved in the space provided. In the event a Detainee is unsatisfied with the resolution, Detainees may request a grievance form. Inmate grievance forms are to be submitted on an individual basis. Grievance forms signed by more than one inmate will not be considered valid. The on-duty corrections supervisor will receive the completed grievance forms. Unless an extenuating circumstance prevents it, inmates will receive a written response within fourteen (14) business days of filing the grievance. Inmates may appeal the grievance decision by submitting an appeal to the Jail Superintendent. The decision of the Jail Superintendent or their designee is final.

The Jail maintains inmate files that contain all written grievances that each inmate may have submitted during his incarceration at the Jail, the written response to those grievances, any appeals to those responses, and any decisions issued on those appeals. SOF ¶ 9 (citing Belcher

---

[1] Unless otherwise indicated, the Court takes the undisputed facts from Defendants' Motion at Doc. 44, which are cited as SOF ¶ ___. Also of note, the second motion, Doc. 48, incorporates the first motion's statement of material facts.

[2] Jamie Belcher is employed as a Lieutenant with the Sheriff's Office, has been the Jail's superintendent since 2019, and in the scope of his employment has become familiar with the Inmate Handbook. *See* SOF ¶¶ 3-5 (citing Belcher Decl.).

3

Decl.); *see also* SOF ¶¶ 11, 12. The Jail's files reflect that Plaintiff submitted a total of seven inmate requests and two grievances while in its custody from November 3, 2021, until February 9, 2022. SOF ¶ 13 (citing Belcher Decl.).

On December 26, 2021, Plaintiff submitted a grievance concerning the removal of his mattress from the Jail's common area. Doc.44-3 at 1-3; *see also* SOF ¶ 14. On that same day, Plaintiff submitted a mail policy grievance taking issue with the Jail withholding a Bible mailed to him from his son on the basis that it was a hard copy. Doc. 44-3 at 4-6; *see also* SOF ¶ 15. Around this time, Plaintiff also submitted four Hunger Strike Request forms (Doc. 44-3 at 7, 11, 13-14; *see also* SOF ¶¶ 16, 18, 21, 22) and two Housing Request forms (Doc. 44-3 at 11, 13; *see also* SOF ¶¶ 11, 12).

On December 29, 2021, Assistant Jail Superintendent Sergeant S.E. Flannery received a phone call from Plaintiff's wife regarding allegations of medical misconduct, staff retaliation, and collusion with the U.S. Marshal's Office directed towards Plaintiff. Doc. 44-3 at 9; *see also* SOF ¶ 17. On that same day, Macon County Health Department employee, nurse Amber Holthaus wrote an email to Sergeant Flannery and Lieutenant Belcher indicating that Plaintiff's wife, Sam, called to complain of Plaintiff's medical treatment, including a lack of care when he had COVID-19. Doc. 44-3. Sergeant Flannery wrote Plaintiff and noted that, as part of his investigation into Sam's claims, he listened to a call made by Plaintiff that violated the Jail's phone policy. 44-3 at 9; *see also* SOF ¶ 17. In particular, Plaintiff called his wife who in turn forwarded the call to Plaintiff's mother. *Id.* Forwarding calls in such a manner violates the Jail's phone policy. *Id.* And so, Sergeant Flannery restricted Plaintiff's phone privileges. *Id.* The next day, Plaintiff submitted a Phone Policy Request form to complain about the discipline. Doc. 44-3 at 8; *see also* SOF ¶ 17.

Plaintiff filed no other grievances or requests while in the Jail's custody. SOF ¶ 23.

4

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once a properly supported motion for summary judgment is filed, the burden shifts to the non-moving party to demonstrate with specific evidence that a triable issue of fact remains for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). The party opposing summary judgment "must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

Of special relevance here, a court must liberally construe a *pro se* litigant's pleadings. *See Smallwood v. Williams*, 59 F.4th 306, 318 (7th Cir. 2023) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017)).

However, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, though a court must "construe all inferences in [a] non-movant's favor, [] he is not entitled to the benefit of inferences that are supported only by speculation or conjecture." *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016) (citing *Nichols v. Mich. City Plant Planning Dept.*, 755

F.3d 594, 599 (7th Cir. 2014)). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## EXHAUSTION STANDARD

The PLRA prohibits prisoners from filing lawsuits pursuant to § 1983 "until such administrative remedies as are available are exhausted." § 1997e(a). Of particular import here, pretrial detainees are "prisoners" for purposes of the PLRA. *Kalinowski v. Bond*, 358 F.3d 978, 979 (7th Cir. 2004). Exhaustion of administrative remedies under § 1997e is a condition precedent to suit, *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 2009), and applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Failure to exhaust administrative remedies is an affirmative defense; the defendants have the burden of proving the inmate had available remedies he did not utilize. *See e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 665 (7th Cir. 2004). Therefore, a lawsuit filed by a prisoner before he exhausted his administrative remedies must be dismissed because the district court lacks the discretion to resolve the claim on the merits. *See Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

"To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005) (citation omitted); *see also Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005). Unless an inmate completes the administrative process by following the rules the jail has established, exhaustion has not occurred. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002).

6

Exhaustion means completing all stages of the process in a timely and proper manner. *Id*. at 1024. An inmate cannot satisfy the requirements under § 1997e by filing an untimely or otherwise procedurally defective grievance or appeal. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).

## ANALYSIS

Defendants argue that Plaintiff did not exhaust his available administrative remedies because he failed to follow the "Grievance Procedures" for detainee complaints as required by the Jail. Docs. 44 at 13-15, 48 at 4.

Of the grievances and requests submitted by Plaintiff, none concern the allegations pertaining to COVID-19 exposure and treatment that the Court permitted to move forward at the merit review stage. Indeed, none of Plaintiff's grievances or requests even reference COVID-19. Thus, the grievances and requests filed by Plaintiff in accordance with the Jail's "Grievance Procedures" cannot possibly serve to exhaust the administrative process.

The Court recognizes that Plaintiff's wife called nurse Holthaus, as well as Sergeant Flannery, and criticized, *inter alia*, Plaintiff's COVID-19 care. Sergeant Flannery then informed Plaintiff of the call and indicated that he was looking into the complaints. However, Plaintiff cannot rely on his wife's phone call in lieu of following the Jail's clearly established grievance processes. Furthermore, Plaintiff demonstrated that he was perfectly capable of filing numerous administratively compliant grievances and requests in late December of 2021, both before and after his wife's phone call, and so there does not appear to be an excuse or justification for his failure to utilize the Jail's grievance policy with respect to his COVID-19 claims. Moreover, Plaintiff's wife called Sergeant Flannery on December 29, 2021, which was two days after the suit was filed, *i.e.*, December 27, 2021 (*see* Doc. 1). And so, even if her call could constitute an appropriate grievance, it would still fail as untimely. *See Pyles v. Nwaobasi*, 829 F.3d 860, 867

(7th Cir. 2016) ("The purpose of the exhaustion requirement is to ensure that prisons have a fair opportunity to correct their own errors through the grievance process.") (citation omitted).

In light of the foregoing, the Court must grant Defendants' Motions for Summary Judgment, and dismiss Plaintiff's federal claims without prejudice, as he failed to exhaust his administrative remedies. That being said, Plaintiff has also brought a medical negligence claim under Illinois law against Defendants Emmerling and Rehman. Having dismissed all of Plaintiff's federal claims, this Court declines to exercise supplemental jurisdiction over his state law claim pursuant to 28 U.S.C. § 1367(c)(3). Therefore, Plaintiff's state law claim is dismissed without prejudice so that he may pursue them in state court. *Reveles v. Carr*, BBC-22-90, 2022 WL 1773486, at *9 (W.D. Wis. June 1, 2022).

**IT IS THEREFORE ORDERED:**

1)   Defendants' Motions for Summary Judgment (Docs. 44, 48) are GRANTED. This action is DISMISSED WITHOUT PREJUICE. Plaintiff takes nothing. The parties will bear their own costs. The Clerk is directed to enter judgment and close this case.

2)   If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a).

3)   If Plaintiff wishes to proceed *in forma pauperis* on appeal, his motion for leave to appeal *in forma pauperis* must identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* FED. R. APP. P. 24(a)(1)(c); *see also Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible

assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED: This 22nd day of May 2024.

                                              s/ *James E. Shadid*
                                            JAMES E. SHADID
                                            UNITED STATES DISTRICT JUDGE